WILLIAM MERICLE & NOAH GROVER, *Plaintiffs in Error*,

*vs.*

WILLIAM MULKS, *Defendant in Error.*

ERROR TO JEFFERSON COUNTY COURT.

Where in an action of trespass the plaintiff calls the defendant or a co-trespasser, to prove the trespass, and in so doing, he testifies that the acts were done by virtue of a warrant, or other authority, such statement cannot be made available to the defendant as a justification.

There is no legal presumption from such statement, that the acts complained of were authorized, or that the process was regular ; but the authority or process itself must be shown.

Under the Territorial act (called the town act) two of the commissioners of highways were authorized to make an order, provided, *by the order so made* it appeared that all three of the commissioners met and deliberated on the subject, or were duly notified to attend for that purpose.

Two commissioners could not act, unless all three were so notified as aforesaid, and this must appear from their order, and cannot be shown *aliunde.*

A copy of a road warrant, for the collection of a road tax, made out and signed by the town clerk, affords no protection to the officer attempting to serve the same.

Duplicates of road warrants for the respective districts, must be signed by the Supervisors, or by some one for them in their presence, and by their direction.

This was an action of trespass, originally institutted by summons in a Justice's Court, in which William Mulks was plaintiff, and William Mericle and Noah Grover were defendants. The plaintiff's declaration contained two counts, in the first of which it was alleged, that the defendants, on the 12th day of August, A. D., 1851, and on divers other days, and times, between that day and the time of the commencement of this suit, with force and arms, a certain close of the plaintiff, situated in the town of Cold Spring, in the county of Jefferson, broke in and

entered, and with their feet trod down, &c.; and then and there, with like force and arms, certain goods and chattels of the plaintiff, to-wit : five hundred bushels of oats, unthreshed, of the value of fifty dollars, five thousand sheaves, and five thousand bundles of oats, of the value of fifty dollars, fifteen acres of oats, then growing, of the value of fifty dollars, and twenty loads of oat-straw, with the oats therein unthreshed, ·of the value of fifty dollars, took and carried away, and to their own use converted ; and other wrongs to the plaintiff then and there did, to the damage of the plaintiff, fifty dollars.

In the second count, it was alleged, in the usual form, that the defendants took and carried away, and converted to their own use, the interest and title of the plaintiff to the property mentioned in the first count, without alleging a breach of the close, to the damage, &c.

To which declaration, the defendants below pleaded the general issue, and gave notice that they would show on the trial, that at the time of the several supposed trespasses, the said William Mericle, one of the defendants, was an overseer of high-ways, in the town of Cold Spring, in the county of Jefferson, and that Noah Grover, the other defendant, was a constable of said town ; that the defendants entered the plaintiff's close, and took the property mentioned in the plaintiff's declaration, by virtue of a road warrant, duly issued to William Mericle, as such overseer, and by him delivered to Noah Grover, constable, who levied upon and sold the same to satisfy a road tax, embraced in said warrant, against the plaintiff.

Upon the issue thus made, the cause was tried by

the justice, and resulted in a judgment for the plaintiff for $36.00, damages and costs. The defendants appealed to the County Court. The cause was tried at the October term, 1851, by the court, and resulted in a finding and judgment in favor of the plaintiff of $27.00 damages. The defendants now bring the cause by writ of error to this court.

On the trial below, the plaintiff, to maintain the issue on his part, called as a witness, in pursuance of the statute, Noah Grover, one of the defendants, who testified, that on the 12th day of August, 1851, he sold some property of the plaintiff, on the northeast corner of his (the plaintiff's) improvements; that he sold the oats, to wit: one equal undivided half of twelve acres, as the property of Mulks, the plaintiff below. The oats were raised on his farm, on the east side of his improvements, north from his house; it was a fair price of oats; sold them at public auction to N. P. Parsons for thirteen dollars. Parsons paid for them. He, Grover, paid highway tax, five dollars and eighty-two cents, to William Mericle, the other defendant. Kept two dollars for his costs, and tendered the balance to Mulks, the plaintiff; told Mericle, the other defendant, that he had levied on the property. N. P. Parsons, and five others, were present at the sale; the oats were principally in the swath, but about one acre was not cut; do not know what oats were worth at that time; Mericle, the other defendant, fetched me the road warrant, and asked me if I could collect the taxes on it; I told him I had levied on the oats; he said he was sorry I had levied on the oats; said I should have levied on a horse or a cow. No one forbid the sale.

On cross-examination, he said : " I sold the oats for

the plaintiff's highway tax. I am a constable of the town of Cold Spring, and was at that time; I had a road warrant as my authority for selling the oats, given to me by William Mericle, the other defendant, who was at that time an overseer of road district number five, in the town of Cold Spring; the warrant was a road warrant for said district where the plaintiff lived; I sold at public auction, after giving proper notice."

Some other witnesses were sworn, as to the quantity and value of the oats, when the plaintiff rested.

The defendants then moved the court to nonsuit the plaintiff, on the ground that he had not made out a case entitling him to recover, it appearing by his own testimony that the defendant Grover sold the property by virtue of a road warrant, and the presumption was, that he acted legally, until the contrary was shown by the plaintiff. This motion was overruled by the court, and exception taken by the defendants.

The defendants then called as a witness, Charles Thorn, who testified that he was town clerk of said town of Cold Spring. That the book produced by him was the book of records of the town of Cold Spring; that it contained the record of the setting off road district No. 5 in the town of Cold Spring; which record is in the words and figures following, and offered in evidence:

" At a meeting of the undersigned, commissioners of highways in the town of Cold Spring, in the county of Jefferson, held on the first day of May, 1847, Resolved, That road district number five, (5,) formerly number six, (6,) shall include the west half of section 29 and 32, and the east half of the northwest quarter, and the east half of the southwest quarter of

24

section 30, and the east half of the northeast quarter, and the east half section 31.

"M. B. WILLIAMS, } "*Comm'rs of High-*
"PHILO JOHNSON, } *ways.*

"Attest, CHARLES THORN,

"*Town Clerk.*"

But to this offer the plaintiff objected, because the order was made and signed by only two of the commissioners of highways; and it not appearing that the third commissioner met with them, or was notified to attend the meeting, to deliberate upon the subject; which objection was sustained by the court, and the defendants excepted.

*Nelson Fryer*, a witness for the defendants, testified that he was chairman of board of supervisors of the town of Cold Spring; that Isaac Johnson and H. B. Strong were the other supervisors, and were such on the 18th of April, 1851. On that day the supervisors made and signed a paper like this one, (which he held in his hand,) and called a road warrant, and left it with the town clerk; this is a duplicate of it; I never signed this paper; the first time I ever saw it to examine it was last month; we, the supervisors, ordered the town clerk to sign our names to this.

On cross examination he said, "this paper is just like the original warrant; saw this the first time before the justice, told the clerk to put my name to it on the 18th of April last. This paper was not then made out. We authorized the clerk to make duplicates and sign our names to the same. There was then no such paper in existence. The town clerk wrote the names on the duplicate warrants; did not see him write the names on it; have no means of knowing when it was made out. I have compared it with the original sign-

ed by us, and it is a true copy. We ordered the clerk to make this out; call it a duplicate."

*Charles Thorn*, town clerk, called by the defendants, said he caused the paper, (the same paper called a duplicate) to be delivered to William Mericle, one of the defendants. He supposed it a copy of the original warrant; he made it out about two weeks after the meeting of the supervisors; he has no knowledge that either of the supervisors saw it, before it was delivered to the overseer; when he made this paper, he copied it from one on file signed by the supervisors; this is the one I sent to Mericle about four weeks after the meeting of the board. All the supervisors names on this paper are in my hand writing, done by the authority of the supervisors. When I made the copies I was at home; the supervisors were not present when I signed it. The signature to the endorsement hereon, to Noah Grover, as constable, is Mericle's hand writing.

The defendants then offered in evidence, the tax list and warrant (being the same paper mentioned and described by the two last witnesses) which was objected to by the plaintiff, on the ground that the warrant thereon, to the overseer, was not actually signed by the supervisors of the town of Cold Spring, and that the tax list was not signed at all, which paper and contents so offered in evidence, were as follows:

[Here follows a copy of the warrant before described, and of the assessment, not signed as above described.]

On the back of the paper were the following endorsements:

"I hereby authorize Noah Grover, to collect the unpaid taxes due in money, on the within tax list,

against William Mulks, Osborne Stewart, and John Watson.

" WILLIAM MERICLE,

" Overseer of Highways.

" Dated Cold Spring, July 28, 1851."

" *July* 28*th*—I have levied on the one-half of twelve acres of oats, or about, on the ground of William Mulks, at 7 o'clock in the evening, by virtue of the within road warrant, the amount of the within tax levied against the goods and chattels of William Mulks and his property, to wit : the one-half of twelve acres of oats, or about, levied upon July 28, 1851, sold August 12, 1851, after giving due notice, at $13.

"NOAH GROVER, Constable."

"*August* 15*th*—Received of Noah Grover $5.82, on William Mulks' road tax.

" WILLIAM MERICLE, Overseer."

The objection of the plaintiff was sustained by the court, the evidence rejected, and the defendants excepted.

The following are the errors assigned :

1. The County Court erred in denying the defendant's motion to nonsuit the plaintiff.

2. The court erred in rejecting the record evidence of the setting-off of road district number 5, in the town of Cold Spring.

3. The court erred in not receiving in evidence, the tax list and road warrant of road district number 5, in the town of Cold Spring, offered by defendants.

4. The court erred in rendering judgment in favor of the plaintiff and against the defendants.

*Alva Stewart and Collins & Smith,* for the plaintiff's in error.

The court below erred in overruling the motion for nonsuit, for there was no evidence to support the plaintiff's case ; under such circumstances, the defendant is entitled to a nonsuit. If the court refuse it, the judgment will be reversed. *Stuart vs. Simpson*, 1 *Wend.*, 376–379 ; *Sanford vs. Emery*, 2 *Greenlf. R.*, 5 ; *Clements vs. Benjamin & Bro.*, 12 *J. R.*, 299 ; *Pratt vs. Thiel*, 13 *J. R.*, 334 ; 4 *Cranch*, 219 ; *Kensbury vs. Lee*, 3 *Hill*, 523. These authorities fully establish the right and duty of the court, whether of limited or general jurisdiction, to grant nonsuits whenever there is no evidence to support the plaintiff's case.

The road warrant offered in evidence in this case, by the defendants below, came regularly to the hands of the defendant, Mericle, and was duly delivered by him to the defendant, Grover, the first being the overseer of highways to whom it was directed, and the other a constable, it was regular on its face, they were ministerial officers and bound to execute it, and could not go behind it to ascertain the manner of its execution. *R. S.* 171, 172, 173, 174 ; *The People vs. Warren*, 5 *Hill*, 440 ; *Beach & Saunders vs. Furman*, 9 *J. R.* 229.

There are several other errors assigned, but these are deemed sufficient to dispose of this case.

*E. Wakeley*, for the defendant in error.

The going into a defence, on the merits, was a waiver of the motion for a nonsuit. 5 *Cushing*, 67 ; 19 *Johns. R.*, 156. If the defendant makes a motion for nonsuit, he must abide by his motion and leave his case there. 19 *Johns. R.*, 156 ; 4 *Cushing*, 414.

The oral testimony of the defendant Grover, though

JUNE TERM, 1853.

Msricle and Grover vs. Mulks.

JUNE TERM,
1853.

Mericle and
Grover
vs.
Mulks.

made a witness by the plaintiff calling him, could not determine the character of the warrant. Whether it be, or be not sufficient, must be judged from the warrant, and not from the oral testimony of the defendant Grover.

Is the paper upon which the defendants acted, and upon which they seek to justify the taking and conversion of the property of the defendant in error, a good one? This question is to be determined by the statute. *R. S. Chap.* 16, § 21, 23, 24. These provisions of the law require the tax list to be made out and signed by the supervisors, the clerk to make duplicates, one for each district, to be signed by the supervisors, and also, that the supervisors shall annex to said tax list a warrant *signed by them*, which shall be, in substance, in the following form, &c. :

The warrant here produced is a mere copy. This is not sufficient. *R. S., Chap.* 4, § 19; *Chap.* 16, § 41; 12 *Wend.*145.

*In regard to the admissibility of the record of the organization of road district number* 5, *See Town Act, p.* 65 ; 1 *Caines' Cases,* 107–8 ; 1 *Wend.* 210, 216.

*Collins,* in reply. As to the duty of the court to order the nonsuit, see *Burrill's Pr.,* 241.

The statute is directory to the supervisors merely, and their signing the duplicate is not essential to the justification of the officer.

*By the Court,* CRAWFORD J. This case comes before us by a writ of error to the Jefferson County Court.

The action was trespass for carrying away a quantity of grain, and was brought by the defendant in error against the plaintiffs in error before a justice of the peace of Jefferson County. The justice gave a

judgment for the plaintiffs in the action, and the de-
fendants appealed to the County Court. On a trial in
the County Court a judgment for the plaintiff was giv-
en, and the defendants have sued out a writ of error.
From the bill of exceptions we find that upon the
trial of the case one of the defendants, (Grover) hav-
ing been called and sworn as a witness for the plain-
tiff, testified that on the 17th day of August, 1851, he
sold some oats belonging to the plaintiff and on his
land or improvement—that the oats were sold at pub-
lic auction for thirteen dollars, out of which sum he
(the defendant, Grover) paid five dollars and eighty-
two cents as highway tax, to the other defendant,
William Mericle, that he kept two dollars for his
(Grover's) own costs and tendered the balance to
Mulks—that part of the oats sold was in the swath
and part was not yet cut down—that he, the witness,
was a constable of the town of Cold Springs (in which
town the property was sold) at the time, and had a
road warrant as his authority for selling the oats,
which had been given to him by Mericle, the other
defendant, who was, at the same time, an overseer of
road district number five, in the town of Cold Spring
—that the plaintiff, Mulks, lived in the same road dis-
trict, and that the sale was made after proper notice
had been given.

There were three other witnesses sworn and exam-
ined for the plaintiff, whose testimony related only to
the value of oats at the time of the sale and the quan-
tity in the field.

Upon this evidence the plaintiff rested his case and
the defendant then moved the Court for a nonsuit,
which was refused. This refusal is assigned and urg-
ed as the first error.

The counsel for the plaintiff in error, insists that because the witness, Grover, stated that he was a constable and had a road warrant for his authority for taking the oats, which warrant was for the district where the plaintiff resided, and had been given to the witness by the other defendant, Mericle, then an overseer of the same district, the presumption was that Grover's oats were legal until the contrary was shown by the plaintiff, and that therefore there had been no case made out, and a nonsuit should have been granted.

In the case of *Hunter vs. Warner*, decided at the present term, we held that a refusal to grant a nonsuit in that case when it should have been granted, was an error for which the judgment would be reversed, but we cannot perceive the application of this rule in the present case.

For the purpose of establishing the fact of *taking* the property, the plaintiff called the defendant Grover as a witness, and, on his direct examination, this witness stated that he took and sold the oats, and out of the proceeds thereof, paid a certain amount of road tax to Mericle, the other defendant. It does not necessarily appear from this witness' testimony, (but it may be presumed,) that this highway tax was payable by, or assessed against, Mulks, the plaintiff; but it seems to us that it would have been impossible for the plaintiff to make out a *prima facie* case more plainly than he did by this witness, and if the statement by him, that he took the property by authority of a road warrant given to him (he being a constable of the town) by his co-defendant, Mericle, the overseer of highways of the district, is to be deemed a sufficient defence or justification, without any other or

further explanation; in most cases of trespass by ministerial officers under color of process, it would be impossible to make out a case for the plaintiff, because the facts which constitute the cause of action invariably disclose the action of the officer under, or by virtue of, some pretended authority. Wherever an officer has, by virtne of legal process or authority, taken the property of another *rightfully*, there can be no hardship or impropriety in requiring him to show the authority by which he acted, and it would be unreasonable to extend the salutary presumption which the law affords in support of the acts of its officers in certain cases, as the dictate of sound policy, to such a case as the one before us.

The motion for nonsuit having been denied, the defendants called Charles Thorne, who being sworn as a witness, testified that he was the clerk of the town of Cold Spring, and produced the book containing what was claimed to be the record of the organization of road district number 5, in the said town. This entry or resolution, which declared the extent of territory to be included in road district number 5, was signed by M. B. Williams and Philo Johnson, as commissioners of highways, and was attested by Charles Thorne, as town clerk.

To the reading of this entry in evidence the plaintiff objected and the court sustained the objection and rejected the evidence. The plaintiffs in error insist that this evidence was improperly rejected, but we believe the entry or resolution was properly excluded. The act of the Territory of Wisconsin, entitled " An act to provide for the government of the several towns in this Territory, and for the division of county government," which was the law in force

at the time of the pretended organization of this road district, provided for the choosing, at the annual town meetings in each town, of *three* commissioners of highways. These officers had the power to organize road districts in their respective towns (*Chap.* 11, *Part* 1, *Sec.* 1.) Any *two* of them were authorized to make any order, *provided by the order so made, it appeared that all of the commissioners* met and deliberated on the subject, or were duly notified to attend for that purpose. (*Chap.* 11, *Part* 7, *Sec.* 1.) The order proposed to be read in evidence, did not show a compliance with this requirement, and was therefore properly rejected.

The remaining points made by the plaintiffs in error, relate to the exclusion of the tax list and road warrant, offered in evidence by the defendants below.

From the testimony of Nelson Fryer, one of the supervisors of the town of Cold Spring, it appeared that the supervisors of that town, on the 18th day of April, 1851, made and signed a road warrant and tax list, which they left with the clerk, and authorized him to make duplicates thereof and sign their names to such duplicates ; that the warrant produced in evidence, was one of the duplicates made out by the clerk, and to which he had signed the names of the supervisors, as directed by them, but that he, Fryer, did not sign the warrant, and did not see the clerk sign the names to it, and did not know when it was made out. Mr. Thorne, the town clerk, testified that the paper or warrant spoken of by Nelson Fryer, was made out by him, about two weeks after the meeting of the supervisors ; that he caused it to be delivered to the defendant, William Mericle ; that the warrant presented to him on the trial was a copy

made by him from one on file, signed by the supervisor; that the one then before him was the same one sent by him to Merricle; that the names of the Supervisors attached or written thereto were in his (Thorne's) handwriting, and that he signed their names by their authority, but they were not present when he signed their names. This witness further stated that he was acquainted with the handwriting of William Mericle, and that the signature to the endorsement on 'the back of the warrant was in Mericle's handwriting. This was the usual endorsement required ·by the statute and was authority by which the defendant, Grover, claimed to act.

After this testimony had been given, the defendants offered in evidence the road warrant and tax list, which had been referred to and examined by the witnesses, Fryer and Thorn. To the admission of these papers as evidence, the plaintiff below objected, because the warrant had not been signed by the supervisors of the town, and the tax list was without any signatures. The court sustained the objections, and rejected the papers thus offered as evidence. The provisions of the statutes on this subject are plain and may be easily comprehended. Section twenty-three of chapter sixteen, requires the clerk to make duplicates of the several tax lists, under the direction of the supervisors, *which duplicates must be signed by the supervisors.* One of these duplicates is required to be filed in the clerk's office, and the other delivered to the overseer of highways. Section twenty-four of the same chapter, directs the supervisors to annex to such tax list " a warrant signed by them," &c.

The only question here, is whether the directions given to the town clerk by the supervisors, to sign

June Term,
1853.

Mericle and
Grover
vs.
Mulks.

their names to the duplicates, can be deemed suffi-
cient ; in other words, whether the warrant offered
in evidence can be deemed signed by the supervisors.
So far as relates to the tax list, there can be nothing
urged ; it is entirely without signature or authentica-
tion. Section nineteen of chapter four of the Revised
Statutes, provides, among other things, that "in all ca-
ses where the written signature of any person is re-
quired by law, it shall always be the proper hand-wri-
ting of such person, or, in case he is unable to write,
his proper mark, or *his name, written by some person
at his request, and in his presence."*

This is one of the provisions of the law relating to
the construction of statutes, and by it we must be
guided in construing the language used in sections
twenty-three and twenty-four of chapter sixteen.

The duties imposed upon the supervisors by these
sections, are not to be delegated by them ; but a case
might exist where a supervisor, being unable to write
his name, might direct the clerk, *in his presence*, to
sign his name. Here, however, we find no such cir-
cumstance. It seems the supervisors did make out
and sign one of the duplicates, which was filed with
the clerk ; but the one given to the overseer of high-
ways, (Mericle,) was neither signed by the supervisors
themselves, nor by the clerk, by their direction or re-
quest, and *in their presence.*

For all legal purposes, it may be regarded as with-
out signatures, and it neither vested in the overseer
or the constable any authority to take the plaintiff's
property, nor can it afford to them any protection or
justification whatever.

The County Court committed no error in excluding
the warrant and tax list offered as evidence.

June Term, 1853.

Mericle and Grover vs. Mulks.

The plaintiffs in error in this case are not within the principle which vouchsafes to a ministerial officer protection in obeying the writ directed to him, regardless of the jurisdiction or right exercise of the power vested in the tribunal or body commanding him to act, so long as his writ is fair and legal on its face, and does not show a want of authority in the court or officer issuing it. In such case, there is a genuine writ issued by the officer or court empowered to issue such process. But in the case before us, we have a warrant improperly issued, and not authenticated by the signatures of the officers who alone are authorized and required to sign it.

We perceive no error in this case, and the judgment of the County Court must therefore be affirmed, with costs.